HONORABLE BRIAN D. LYNCH

HEARING DATE: FRIDAY, JANUARY 25, 2013
HEARING TIME: 11:30 A.M.
LOCATION: COURTROOM I, TACOMA
RESPONSE DUE: TIME OF HEARING

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

MERIDIAN SUNRISE VILLAGE, LLC,

　　　　　　　Debtor.

No. 13-40342

DECLARATION OF MARTIN WAISS IN SUPPORT OF DEBTOR'S EMERGENCY FIRST DAY MOTIONS:

EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL, GRANTING OF ADEQUATE PROTECTION, AND SETTING FINAL HEARING

EMERGENCY MOTION FOR ORDER APPROVING PROPOSED ADEQUATE ASSURANCE UNDER BANKRUPTCY CODE § 366 ON AN INTERIM BASIS

EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO CONTINUE USING PREPETITION BANK ACCOUNTS AND CHECKS

MARTIN WAISS declares as follows:

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 1

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1

Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 1 of 10

1. I am the President of Investco Financial Corp, the Manager of Meridian Sunrise Village, LLC ("Debtor"), debtor in possession herein. I have personal knowledge of the facts set forth herein and I am competent to testify to the same.

2. The Debtor owns Sunrise Village, a shopping center in Puyallup's South Hill neighborhood (the "Project"). Completed in 2008, the Project presently comprises over 225,000 square feet of leasable space and features a mix of national, regional and local tenants including Staples, PetSmart, LA Fitness, Party City, Sleep Country, Famous Footwear, Games Workshop and AT&T Mobility. The Project also includes a number of restaurant options for customers, including Qdoba Mexican Grill, the Ram Restaurant, Menchies Yogurt and Northwest Wine Bar. Although not strictly a part of the Project, a Target location in the center also drives significant traffic to the Project.

3. The Project is currently about 75% leased and lease-up activities are ongoing. Negotiations are ongoing with prospective new tenants, and there is very little scheduled tenant rollover until 2018.

4. The Debtor also owns additional property slated for future development, which would add approximately 200,000 additional square feet of leasable space.

5. An appraisal of the Project was completed in January 2012 by McKee & Schalka at the request of the Lender Group (as defined below). Effective July 17, 2012, the "as is" value of the Project is $59,700,000 with a stabilized value of $74,400,000.

6. The Project is a profitable enterprise. Despite now being at only about 75% occupancy, the Debtor's monthly net operating income is approximately $235,000, which has permitted the Debtor to make timely and full payments due under the applicable loan documents. Net income and enhancement of the value of the Project will both increase as the Debtor completes lease-up activities.

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 2

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1

Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 2 of 10

**The Prepetition Loans**

**The Primary Loan.**

7. Prior to the January 18, 2013 petition date ("Petition Date"), the Debtor entered into a construction loan with U.S. Bank National Association ("U.S. Bank") to provide funding to complete construction of the Project (the "Primary Loan"). The terms and conditions of the Primary Loan are evidenced by, among other things, the following documents:

    a. Loan Agreement (Vertical Construction), dated as of April 4, 2008, a true copy of which is attached hereto as Exhibit A.

    b. First Amendment to Loan Agreement, dated October 22, 2009, a true copy of which is attached hereto as Exhibit B.

    c. Second Amendment to Loan Agreement (Vertical Construction Loan), dated January 29, 2010, a true copy of which is attached hereto as Exhibit C.

    d. Third Amendment to Loan Agreement (Vertical Construction Loan), dated June 25, 2010, a true copy of which is attached hereto as Exhibit D.

    e. Fourth Amendment to Loan Agreement (Vertical Construction Loan), dated April 5, 2012, a true copy of which is attached as Exhibit E.

    f. Fifth Amendment to Loan Agreement (Vertical Construction Loan), dated April 27, 2012, a true copy of which is attached hereto as Exhibit F.

    g. Promissory Note, dated April 4, 2008 in the original principal amount of $75,000,000, a true copy of which is attached hereto as Exhibit G.

    h. Deed of Trust, Assignment of Rents and Leases and Security Agreement, dated April 4, 2008, a true copy of which is attached hereto as Exhibit H.

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 3

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1

Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 3 of 10

    i.  First Amendment to Deed of Trust, dated October 22, 2009, a true copy of which is attached hereto as <u>Exhibit I</u>.

    j.  Second Amendment to Deed of Trust, dated January 29, 2010, a true copy of which is attached hereto as <u>Exhibit J</u>.

Each of the foregoing documents, and all other documents that evidence the Primary Loan, are herein referred to as the "<u>Loan Documents</u>."

  8.  As reflected in the Loan Documents, the Primary Loan is secured by (among other things) security interests, liens and encumbrances (the "<u>Prepetition Liens</u>") in and against (i) the real property and improvements comprising the Project, (ii) all tenant leases in the Project, and (iii) all rents from such leases (collectively, the "<u>Prepetition Collateral</u>"). The Debtor believes the Prepetition Liens constitute enforceable, properly perfected, and first-position security interests in the Prepetition Collateral, but at this time does not request that the Court make any finding as to the amount of the Primary Loan nor the validity, priority or extent of the Prepetition Liens.

  9.  Shortly after it originated the Primary Loan, and as contemplated under the provisions of the Loan Agreement, U.S. Bank sold and assigned portions of the Primary Loan to three other lenders pursuant to an Assignment and Acceptance Agreement that was entered into with each such lender. True copies of the Assignment and Acceptance Agreements are attached hereto as <u>Exhibit K</u> (Bank of America), <u>Exhibit L</u> (Citizens Business Bank) and <u>Exhibit M</u> (Guaranty Bank). U.S. Bank, Bank of America, Citizens Business Bank and Guaranty Bank are referred to herein as the "<u>Lender Group</u>." U.S. Bank is the administrative agent bank for the Lender Group.

  10.  As of the Petition Date, the outstanding balance of the Primary Loan was approximately $54,900,000. Based upon the as-is valuation reflected in its recent appraisal of the Project, the Lender Group enjoys an equity cushion in its collateral of over $4,800,000.

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 4

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1

Case 13-40342-BDL Doc 6 Filed 01/22/13 Ent. 01/22/13 13:39:01 Pg. 4 of 10

**Phase II and III Loan**

11. In June 2007, the Debtor entered into a construction loan agreement with U.S. Bank to finance construction of Phases II and III of the Project (the "Phase II & III Loan"). The initial loan commitment for the Phase II & III Loan was $41,250,000, much of which was drawn. During 2010, the Debtor reduced the outstanding balance of the Phase II & III Loan principal paydowns in a total amount of $1,250,000 (in addition to funding an interest reserve of $969,000), application of proceeds from the sale of a pad site to Target, and moving a portion of the remaining indebtedness to the Primary Loan.

12. The Phase II & III Loan is secured by 14.5 acres of partially improved retail pads. As of the Petition Date, the outstanding balance of the Phase II & III Loan was $8,436,000. Unlike with the Primary Loan, U.S. Bank continues to hold all of the lender's rights in the Phase II & III Loan. The Debtor is current on all payments under the Phase II & III Loan.

**Phase IV Loan**

13. In February 2008, the Debtor entered into a loan agreement with U.S. Bank to finance acquisition of additional property – a vacant parcel referred to as the "Miller Parcel" and an existing building then occupied by Valley Bank (the "Valley Bank Building"). The initial commitment for the Phase IV Loan was $1,680,000. During 2010, the Debtor reduced the outstanding balance by way of principal paydowns in a total amount of $635,000 in addition to funding an interest reserve of $168,000.

14. The Phase IV Loan is secured by the Valley Bank Building and the Miller Parcel. As of the Petition Date, the outstanding balance of the Phase IV Loan was $1,045,000. U.S. Bank continues to hold all of the lender's rights in the Phase IV Loan. The Debtor is current on all payments under the Phase IV Loan.

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 5

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1

Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 5 of 10

**Events Leading to Bankruptcy Filing.**

**Extensions of Maturity Date and Lender Group Compensation.**

15. The Loan Agreement for the Primary Loan provided for an initial maturity date of October 4, 2009, with an option to extend maturity to April 4, 2010 upon the satisfaction of certain conditions. However, due to the economic recession that was especially acute in the real estate sector – both locally and nationally – lease-up activities did not proceed during 2008 and 2009 at the pace initially contemplated by the Loan Agreement. The Debtor and the Lender Group therefore entered into a series of amendments to the Loan Agreement, pursuant to which the maturity date was ultimately extended to June 25, 2013.

16. The Lender Group, however, was well-compensated for this concession. During 2010 alone, the Debtor made principal paydowns on the Primary Loan in a total amount of over $7,000,000. The Debtor also agreed to reduce the amount of the Lender Group's commitment as to the Primary Loan by another $2,116,302. Applying the principal paydowns, the commitment went from $75,000,000 to $65,340,468. The Debtor also paid the Lender Group various fees in connection with these amendments to the Loan Agreement totaling more than $850,000 – in addition to the $375,000 fee that was paid in connection with the origination of the Primary Loan.

17. In addition, beginning in November 2011 the Debtor began making monthly principal payments based upon a "net cash flow" formula that have reduced principal by approximately $350,000 in total.

18. Up to the Petition Date, the Debtor remained current on all payment obligations to the Lender Group.

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 6

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1
Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 6 of 10

**Addition of Financial Covenant Becomes Sole Source of Default.**

19. A financial covenant that was added two years after the Primary Loan was originated is the sole issue under the Primary Loan. In connection with the Third Amendment to the Loan Agreement, the Lender Group required that a debt service coverage ratio covenant (the "<u>DSCR Covenant</u>"), which does not appear in the original form of the Loan Agreement, be added as a condition to the extension of the maturity date of the Primary Loan. <u>See</u> <u>Exhibit D</u> at § 2.12.

20. In 2012, the Lender Group declared the Debtor to be in default of the DSCR Covenant and demanded immediate payment of $11,622,422, the amount allegedly owing to bring the Primary Loan into compliance with such covenant. The calculation of the ratio under the DSCR Covenant is in part based upon the application of an interest rate of 6.25%, a rate more than 200 basis points higher than the market rate for loans of this type. This amount equates to approximately twenty percent of the total outstanding balance of the Primary Loan. The Debtor was and remains unable to meet this payment demand.

21. The Primary Loan also contains a commitment from the Lender Group to fund tenant improvements and lease commissions, so as to permit the Debtor to continue with lease-up activities and allow the Project to achieve stabilization and further enhance the value of the Lender Group's collateral. Despite numerous requests by the Debtor, the Lender Group has refused to advance any such funding solely on the basis of the single covenant default.

22. The Debtor sought to negotiate a workout agreement with the Lender Group to address the covenant default. To that end, the parties entered into the Fourth and Fifth Amendments to the Loan Agreement, pursuant to which the Lender Group agreed to (among other things) forbear from exercising its remedies through May 15, 2012.

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 7

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1
Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 7 of 10

23. In addition, and at the request of the Lender Group, the Debtor engaged Capstone Advisory Group, LLC, as its financial consultant to assist it in workout discussions. In consultation with the Debtor, Capstone developed a presentation discussing various alternatives (most of which had already been the subject of unsuccessful discussions between the Lender Group and the Debtor), and the Capstone team also reached out to individual members of the Lender Group seeking to pursue a dialogue towards a workout solution.

24. Unfortunately, one member refused to participate in any discussions and another made demands that the Debtor and its professionals deemed not reasonable (and unworkable) under the circumstances. Despite Capstone's efforts, no progress was made with the Lender Group and the Debtor was otherwise unable to achieve any traction with the Lender Group even as to the rough outline of a possible workout arrangement.

25. In October 2012, the Debtor learned that three of the Lender Group members were marketing their interests in the Primary Loan for sale. A provision in the Loan Agreement permitted transfers of member interests only to other commercial banks or similar institutions, absent the Debtor's consent. The Lender Group requested that the Debtor waive this protection, but did not offer any consideration in exchange for this waiver. The Debtor declined the request.

26. By letter dated January 9, 2013, the Lender Group advised the Debtor of its election to begin charging default-rate interest on the Primary Loan, effective immediately. The additional cost to the Debtor is approximately $250,000 per month, an expense the Debtor does not have the remotest ability to pay. Following a meeting with counsel for the Lender Group, at which the Debtor was advised that there was no chance that the Lender Group would suspend the running of default interest on the Primary Loan, the Debtor made the difficult decision to commence this Chapter 11 case to

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 8

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1
Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 8 of 10

permit it the opportunity to reorganize its financial affairs, including the treatment of the Primary Loan.

**Use of Cash Collateral and Adequate Protection**

27. The Debtor requires the immediate use of cash proceeds from the collection of rents from tenants of the Project ("Cash Collateral") to minimize disruption to and avoid termination of its operations, and thereby avoid immediate and irreparable harm to its business pending a final hearing.

28. The Debtor proposes to use Cash Collateral pursuant to the terms set forth herein and the budget attached hereto as Exhibit N (the "Interim Budget").

29. Debtor believes that the interests of the Lender Group are adequately protected by the significant equity cushion that exists in the Prepetition Collateral, a cushion totaling over $4.8 million.

30. Nevertheless, as additional adequate protection, the Debtor proposes, on an interim basis, to grant in favor of the Lender Group security interests and liens (collectively, the "Replacement Liens") in and to (i) all leases that the Debtor enters into following the Petition Date, and (ii) all rents and other income the Debtor receives on account of leases entered into following the Petition Date.

31. The Debtor believes the terms and conditions of this Interim Order are a fair and reasonable, and the entry of this Order is in the best interests of the Debtor's estate and its creditors.

**Adequate Assurance to Utilities Pursuant to Bankruptcy Code § 366**

32. As adequate assurance of future payment pursuant to Bankruptcy Code § 366, the Debtor proposes to provide a deposit to each of its utility providers in an amount equal to one-half of the cost of its estimated average monthly utility consumption (approximately two weeks of consumption) (the "Proposed Adequate Assurance") as set forth below:

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 9

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1

Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 9 of 10

| Utility Provider | Proposed Adequate Protection Deposit |
|---|---|
| Puget Sound Energy | 4,997.74 |
| DM Recycling | 568.14 |
| Murrey's Disposal, Inc. | 3,769.69 |
| Pierce County Sewer | 1,908.14 |
| Firgrove Mutual Water Co. | 1,450.53 |
| Century Link | 44.00 |
| Comcast | 106.84 |

**Continued Usage of Prepetition Bank Accounts and Checks**

33. The Debtor has the following bank accounts:

| Financial Institution | Account Type | Account No. | Purpose of Account |
|---|---|---|---|
| US Bank | Checking | 4827 | Operating Account |
| Heritage Bank | Checking | 4251 | Operating Account/Marketing |

34. Rents are deposited into the US Bank account and may be transferred to the Heritage Bank account. Both accounts are used for payment of operating expenses.

35. The parties with which the Debtor transacts business will be aware of its status as a debtor-in-possession. It would be needlessly burdensome, as well as disruptive to business operations, for the Debtor to change its bank accounts and checks. Therefore, the Debtor respectfully requests that it be authorized to use its prepetition checks and bank accounts in the same manner as it has done prepetition and without placing the label "debtor-in-possession" on each check.

36. I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 22nd day of January, 2013.

/s/ Martin Waiss
Martin Waiss

DECLARATION OF MARTIN WAISS IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS: – Page 10

BUSH STROUT & KORNFELD LLP
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1949 20121 ya18ey06z1
Case 13-40342-BDL    Doc 6    Filed 01/22/13    Ent. 01/22/13 13:39:01    Pg. 10 of 10