Entered on Docket August 16, 2013

**Below is a Memorandum Decision of the Court.**



_____
**Brian D. Lynch
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>Meridian Sunrise Village,<br><br>                  Debtor. | Case No. 13-40342<br><br>**MEMORANDUM DECISION AS TO CONFIRMATION ISSUES FOR DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION** |

      The Motion to Confirm (dkt #176) the Second Amended Chapter 11 Plan of Reorganization (dkt #175) came on for hearing on July 24, 2013, after two lenders in Class 2, U.S. Bank National Association and Guaranty Bank and Trust Company, who had previously cast ballots against the Debtor's First Amended Plan, cast ballots in favor of the Second Amended Plan.

      U.S. Bank, Guaranty Bank, Citizens Business Bank, and other entities hold a note secured by a first mortgage on the Sunrise Village shopping mall owed by Debtor Meridian Sunrise Village, LLC, in Puyallup, Washington (the "Primary Loan"). U.S. Bank initiated the Primary Loan before assigning 66.67% of it out to other lenders, and U.S. Bank remains the Agent for the Lender Group.

MEMORANDUM ON CONFIRMATION - 1

**Below is a Memorandum Decision of the Court.**

The Lender Group is Class 2 of Debtor's Plan and, for purposes of voting on confirmation, consists of U.S. Bank (holding 33.33% of the total loan), Guaranty Bank (holding 20% of the total loan), and Citizens Business Bank ("Citizens") (holding 20% of the loan). As explained below, the holders of the remaining 26.67% of the loan have been enjoined from voting on confirmation.

U.S. Bank also has two other secured loans with Debtor that it holds by itself, which are Classes 3 and 4, respectively, of the Plan.

Each of the Class 2 lenders had previously voted to reject Debtor's First Amended Plan, as had U.S. Bank for Classes 3 and 4. The Court had received two days of evidence on confirmation in support of the First Amended Plan, on June 27 and June 28, 2013, as Debtor sought "cram down" confirmation of the First Amended Plan over the objection of U.S. Bank, as Agent for itself and the other members of the Lender Group. Each of the Lenders, including Citizens, submitted ballots rejecting the First Amended Plan, and U.S. Bank also submitted an additional ballot on behalf of all of Class 2 as Agent.

Bank of America was an original fourth member of the Lender Group, but post-petition it sold and assigned its 26.67% share in the Primary Loan to N.B. Distressed Debt Investment Fund Limited, which in turn sold portions of its interest to N.B. Distressed Master Fund, L.P. and Strategic Value Special Situations Master Fund II LP (the "Funds"). Debtor challenged Bank of America's assignment of its interest to the Funds in an adversary proceeding in which it sought a preliminary injunction enjoining the Funds from exercising rights as members of the Lender Group, on the ground that they were not "Eligible Assignees" under the Loan Agreement. *Meridian Sunrise Village LLC v. N.B. Distressed Debt Inv. Fund Ltd. et al.*, No. 13-04225-BDL (filed May 23, 2013)(the "Adversary").

The Court granted Debtor's motion for preliminary injunction on June 18, 2013, precluding the Funds from exercising any of their rights in the main case either under

MEMORANDUM ON CONFIRMATION - 2

Paragraph 12.9(b) of the Loan Agreement or 11 U.S.C. § 1126. *Id.* at dkt #39. The Funds have sought interlocutory appeal of this decision to the District Court, USDC Case No: 13-CV-5503-RBL. Both their motions to the Bankruptcy Court and the District Court for stay pending appeal were denied. *Id.* at dkt #71; 72. Accordingly, pursuant to the preliminary injunction, the Funds were not entitled to vote on either the First or the Second Amended Plan.

The Court has jurisdiction over these confirmation issues pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(L).

## ISSUES PRESENTED

1. Excluding the Funds, Class 2 contains three lenders: U.S. Bank, Guaranty Bank, and Citizens. The first two, controlling more than two-thirds of the dollar amount held by the eligible voting members of the class and over half of the number, have voted in favor of confirmation. The third financial institution, Citizens, has voted against confirmation. The question at the heart of Debtor's motion to confirm the Amended Plan of Reorganization is: have the voting members of Class 2 accepted the Plan? If they have, then under 11 U.S.C. § 1129(a)(8) all classes have accepted the Plan, and if Debtor has otherwise complied with § 1129(a), the plan is confirmable.

2. The Second Amended Plan provides that U.S. Bank as Agent for the Lender Group will dismiss the state court lawsuit against Evergreen Capital Trust ("ECT"), owner of the Debtor and guarantor on the Primary Loan, without prejudice. In addition, U.S. Bank as Agent and as an individual lender covenants and agrees to refrain from taking actions to collect against ECT on its Guaranty as long as no material uncured default exists under Section IV.B.2 of the Second Amended Plan. Citizens and the Funds object to the Second Amended Plan or the Order Confirming Plan to the extent this provision affects the liability of ECT as to its Guaranty, on the grounds that such a provision is in violation of 11 U.S.C. §

524(e), which is grounds for denial of confirmation under 11 U.S.C. § 1129(a)(1) – that a plan comply with all provisions of the Bankruptcy Code.

    3.    The Funds argue that the change in the Second Amended Plan relating to the definition in the loan documents of who may be an "Eligible Assignee" is improper, as it seeks to alter the Funds' right to vote in the event it prevails on its appeal of the Court's order granting a preliminary injunction.

    4.    Lastly, Citizens, incorporating by reference an argument raised earlier by U.S. Bank as to the First Amended Plan, argues that the Second Amended Plan lacks feasibility.

## ANALYSIS

### 1. Did Class 2 Properly Accept the Second Amended Plan?

11 U.S.C. § 1126(c) provides that in multi-member classes, such class accepts a plan of reorganization if more than half the members and two-thirds of the dollar amount held by the class, favor the plan. Here, the members of Class 2 are all part of a syndicated loan. In a syndicated loan, each lender in the syndicate loans money to (or holds a proper assignment from a lender), and has a contractual relationship with, the borrower. *In re Rosewood at Providence, LLC,* 470 B.R. 619, 625 n. 8 (Bankr. M.D. Ga. 2011). The terms of the Loan Agreement here recognize, and the parties appear to concede, that the Loan Agreement between the borrower, U.S. Bank as Agent for the Lender Group, and the individual lenders is a syndication. *See* Adversary, dkt#27, Declaration of James Gradel.

As each lender in a loan syndicate has a direct contractual relationship to the borrower, each is the holder of a claim or interest against that borrower. A holder of a claim is one who has a "right to payment." *In re Pioneer Fin. Corp.,* 246 B.R. 626, 633 (Bankr. D. Nev. 2000)(citing 11 U.S.C. § 101(5)(A)). The holder of an allowed claim or interest is the party entitled to vote on a plan of reorganization. *Id.;* 11 U.S.C. §1126(a). Thus, unless there is an agreement by the lenders as holders of claims authorizing an agent to vote on their behalf,

MEMORANDUM ON CONFIRMATION - 4

**Below is a Memorandum Decision of the Court.**

each eligible member of the Lender Group was entitled to, and did in fact, vote in Class 2. And Class 2 accepted the Second Amended Plan because over half in number and more than two thirds in dollar amount have voted in favor. However, Citizens contends that Paragraph 12.9(b)(i) of the Loan Agreement requires unanimity as to certain voting decisions, including changes to interest rate and term such as are contained in the Second Amended Plan and that provision overrides the language of the Bankruptcy Code.

*The Relevant Provisions of the Loan Agreement*

Paragraph 12 of the Loan Agreement addresses governance among the Lenders. Paragraph 12.2 provides in part: "As to any matters not expressly provided for by this Agreement or any other Loan Document, Agent shall in all cases be fully protected in acting, or in refraining from acting, hereunder or thereunder in accordance with instructions given by Required Lenders,[1] such instructions of Required Lenders and any action taken or failure to act thereto shall be binding on all of Lenders."

Paragraph 12.9(a) of the Loan Agreement provides that U.S. Bank as Agent for the Lender Group has the power to "grant or refuse to grant any consent or approval required or requested of it hereunder or under any of the other Loan Documents in its sole and absolute discretion," or "consent or refuse to consent to any modification, supplement or waiver under any of the Loan Documents," except as provided in Paragraph 12.9(b).

Paragraph 12.9(b), cited by Citizens, provides that the "Agent shall not, without the approval of Required Lenders or all of the Lenders, as specified below...," "…grant any consent or approval required or requested of it hereunder or under any of the other Loan Documents, consent to any modification, supplement or waiver under any of the Loan

---

[1] "Required Lenders" is defined in Paragraph 1.1 as "Lenders whose Proportionate Shares of the Loan total in the aggregate a percentage equal to or greater than 66 2/3 percent (but excluding from such calculation the Proportionate Share of any Defaulting Lender)."

MEMORANDUM ON CONFIRMATION - 5

**Below is a Memorandum Decision of the Court.**

Documents, or take any action, if the effect of such consent, approval, modification, modification, supplement, waiver or action would result in:

    (i)    without the consent of all Lenders:

        ...
        (B) the postponement of the Maturity Date;
        …

        (D) a decrease in the applicable interest rate under the Loan or the waiver of any interest (including interest at the Default Rate) thereon, except to the extent permitted in the Loan Documents;

        (E) a release of Borrower from its obligations under the Loan Documents, or a release of Guarantor under the Guaranty from its obligations with respect to the Loan…

    (ii)    Without the consent of Required Lenders:

        …

        (B) a decision to foreclose on, or exercise remedies in order to realize upon, any Collateral after a Default or an Event of Default, as the case may be or bring any action to enforce the Guaranty or other Loan Documents….

Paragraph 12.16 provides that "[i]n the event a bankruptcy or other insolvency proceeding is commenced by or against Borrower or Guarantor, Agent shall have the sole and exclusive right to file and pursue a joint proof of claim on behalf of Lenders. Each Lender irrevocably waives its right to file or pursue a separate proof of claim in any such proceedings."

Citizens, supported by the Funds, argues that the Loan Agreement provides that U.S. Bank as Agent will vote the Lender Group's claim, citing Paragraph 12.16, and that there will be only one vote. They further argue that the unanimity requirement in Paragraph 12.9(b)(i) applies as to how that vote is cast, because unanimity is required as the Second Amended Plan changes the interest rate and term of the loan. Therefore, pursuant to Paragraph 12.9(b)(i), the Agent cannot cast the Class 2 ballot for the Second Amended Plan when any eligible member of the Lender Group opposes those provisions, as Citizens does. At bottom,

MEMORANDUM ON CONFIRMATION - 6

this argument is that the governance provisions of the Loan Agreement prevail over the voting provisions in § 1126(c). Citizens asks the Court to deny confirmation because the ballots submitted by U.S. Bank and Guaranty Bank are invalid and should not be counted as accepting the Plan.

Debtor and U.S. Bank argue that each eligible Lender Group syndicate member is entitled to vote on the Plan and the requisite number and amount have accepted the Second Amended Plan under § 1126(c). Paragraph 12.16, they argue, applies only to filing and pursuing a "joint claim," and not to plan confirmation voting under § 1126(c). Alternatively, they argue that U.S. Bank as Agent was authorized to vote in support of the Second Amended Plan as Agent under the Loan Agreement, citing Paragraph 12.9(b)(ii)(B), because voting on a plan is a decision about remedies or enforcement. Lastly they argue that even if the unanimity requirement in Paragraph 12.9(b)(i) applies to plan confirmation voting, it is not binding when it conflicts with the voting provisions of § 1126(c), analogizing to cases which have found unanimity requirements not binding in § 363(f) sales, *In re Chrysler, LLC,* 405 B.R. 84, 102 (Bankr. S.D.N.Y. 2009), and which have found that senior and junior lienholders on certain property may not agree to have the holder of the junior lien relinquish the right to vote to the senior lienholder, *Bank of Am. V. North LaSalle St. LP (In re 203 N. LaSalle St. P'ship),* 246 B.R. 325 (Bankr. N.D. Ill. 2000).[2]

*The Court's Prior Ruling on the Preliminary Injunction*

As a preliminary matter, Citizens and the Funds argue that the Court's ruling on the Debtor's motion for a preliminary injunction established that Paragraph 12.9(b)(i) governs plan confirmation voting, and that ruling is conclusive as to the current question.

---

[2] U.S. Bank has submitted an application for judicial notice of adjudicative facts [dkt #202] as to orders in three other cases regarding balloting and solicitation procedures. By separate order, that application is denied.

MEMORANDUM ON CONFIRMATION - 7

**Below is a Memorandum Decision of the Court.**

Debtor's motion for a preliminary injunction expressed two concerns about how the alleged ineligible assignees might try to affect the Debtor's ability to achieve consensual acceptance of a plan: first, that the Funds would assert, and U.S. Bank would agree, that under Paragraph 12.9(b)(i) no change in interest rate or term or regarding the guaranty could be approved without the Lenders' unanimous consent; and second, that with the existence of three Funds with interests in the Primary Loan, a plan could not be accepted under § 1126(c) because a Plan could not meet the numerosity test without the approval of the Funds (as they were three of the now six holders of the Primary Loan).

The Court ultimately agreed with the Debtor that there was a substantial likelihood that the Funds were not Eligible Assignees and that without a preliminary injunction, the Funds would be able to thwart any consensual plan. It enjoined U.S. Bank from treating the Funds as Eligible Assignees for purposes of plan confirmation under the Loan Agreement and enjoined the Funds from exercising any rights under the Paragraph 12.9(b) or under § 1126 in connection with voting on confirmation of the Debtor's Plan of Reorganization.

While supporting the Funds' position at the preliminary injunction hearing that they were "Eligible Assignees," U.S. Bank never agreed that any Lender could veto a plan pursuant to Paragraph 12.9(b)(i). The Court's ruling found that either under Paragraph 12.9(b)(i)'s unanimity requirement or under § 1126(c)'s numerosity requirement, Debtor faced a risk of irreparable harm. The Court's prior holding was not a final interpretation of Paragraph 12.9(b). Rather, the Court held "…that the Debtor will likely be irreparably harmed if the Funds are allowed to participate in the voting on Debtor's plan, either under paragraph 12.9 of the loan agreement or pursuant to Section 1126 of the Code." Adversary, dkt#47, 21:14 to 22:11, Transcript of Court's Oral Ruling on Preliminary Injunction.

**Below is a Memorandum Decision of the Court.**

The Debtor's concern is no longer hypothetical, and the Court must decide whether and how Paragraph 12.9 applies to plan confirmation voting, albeit due to Citizens's opposition to the current proposed plan, rather than the Funds.

*The Court's Conclusions Regarding Class 2's Acceptance*

The only bankruptcy-specific provision in Paragraph 12 of the Loan Agreement is Paragraph 12.16, which is limited to giving the Agent the exclusive right to file and pursue a "joint proof of claim" on behalf of Lenders. It does not address plan confirmation voting. Designating an agent to file a joint claim alone does not give that agent the power to vote the syndicate lenders' shares at confirmation. A party must be an authorized agent to vote on behalf of a claim holder to accept or reject a plan. *See* Fed. R. Bankr. P. 3018(c); *In re Allied Owners' Corp.,* 74 F.2d 201, 204 (2d Cir. 1934)("creditors' beneficial interests are not to be impaired by a trustee exercising such power unless it clearly appears that such power has been given."). The term "joint claim" in Paragraph 12.16 intimates that each of the eligible Lenders had its own claim and that U.S. Bank was delegated the duty to file one proof of claim on behalf of the Lenders. Notwithstanding arguments by Citizens that it was not served with the Disclosure Statement and Plan or otherwise treated as if it had a separate claim, it does not deny that it did get sufficient notice of the First and Second Amended Plans, and was kept apprised of all events happening in Debtor's case, evidenced by its filing of this objection and, and that it did, in fact, file a ballot as to both the First Amended Plan and the Second Amended Plan.

Each Lender in the syndicate may thus vote its proportionate share of the syndicated loan, i.e. its "claim", under 11 U.S.C. § 1126(c), in the absence of an agreement among syndicate lenders specifically bargaining away the right to vote separately on a borrower's bankruptcy plan as was done in *In re Rosewood at Providence, LLC,* 470 B.R. at 625-626. Although U.S. Bank filed ballots both as an individual lender and as Agent in an effort to

MEMORANDUM ON CONFIRMATION - 9

preserve alternative arguments for approving this Plan, this Court concludes that U.S. Bank's ballot as Agent is not valid, and its only acceptable ballot was as an individual lender. U.S. Bank was not authorized in the Loan Agreements to vote to accept or reject the plan as the Agent on behalf of the Lender Group.[3] U.S. Bank's only valid vote on confirmation of a plan is as an individual lender because there is no express agreement among the Lender Group regarding plan voting.

If the requisite number and amount of claims in the Lender Group's class approve the plan, and the plan otherwise complies with § 1129(a), then a plan may end up altering the term or interest rate. But that is different than the Agent consenting to such changes under Paragraph 12.9(b). Voting in favor of a plan, in fact plan confirmation generally, is different than a borrower and lender negotiating changes to loan terms outside the Chapter 11 setting. The process of loan modification is an entirely consensual process, and the choice for the Lender Group is to agree or not agree, according to the terms of the Loan Agreement. Outside of bankruptcy, if a proposed modification covers the situations listed in Paragraph 12.9(b)(i), then any Eligible Lender or assignee may veto the modification. In plan confirmation, however, there are other options, i.e., Debtor can seek to modify its obligation under § 1129(b) or get a class of creditors to vote in favor of new terms under § 1126(c), regardless of whether each Lender in a Lender Group agrees. Paragraph 12.9 does not apply to plan confirmation voting.

The cases cited by the Debtor and U.S. Bank holding that § 1126(c) preempts agreements between junior and senior lienholders granting voting rights to another claimholder, even if controlling in that context, are inapposite to loan syndicates, where there

---

[3] There is one other reason US Bank could not have accepted the Plan as Agent, even assuming arguendo that Paragraph 12.9(b)(ii) was found applicable to plan confirmation voting. The Second Amended Plan was not supported by Required Lenders, i.e., by 66 2/3 percent of the <u>loan</u>. U.S. Bank had only the votes of 2/3 of the voting Lenders.

MEMORANDUM ON CONFIRMATION - 10

are strong policy reasons to have an agreement about plan confirmation voting. The problem in this case is not that the Lenders couldn't have agreed about how their claims would be voted in plan confirmation. They simply didn't.

In conclusion, the Eligible Lenders in the Lender Group properly voted their proportionate shares as part of balloting on the Second Amended Plan by individual ballots. The requisite number and amount of eligible voting Lenders voted in favor under 11 U.S.C. § 1126(c) and the Court concludes that Class 2 has consented to Debtor's Second Amended Plan.

***2. Whether the Provisions Regarding Dismissal of the Guaranty Litigation Without Prejudice and the Other Covenants Regarding the Guarantor Violate § 1129(a)?***

Paragraph 2.m. of Article IV of the Second Amended Plan provides that the lawsuit by U.S. Bank as Agent against the Guarantor be dismissed without prejudice, and that for so long as no material default exists under the Plan, U.S. Bank, "on behalf of itself as Agent and as a member of the Lender Group covenants and agrees that it shall not make any demands, commence any litigation, institute any process, or otherwise take any action whatsoever against the Guarantor and/or its Trustees, or against any other person or entity that is or may be jointly liable with Borrower…"

Citizens and the Funds argue that the provisions violate § 524(e)'s prohibition on a affecting the liability of a non-debtor, and in turn preclude confirmation under § 1129(a)(1). They point to cases in this Circuit holding that temporary injunctions in plans preventing creditors from pursuing non-debtor parties have been found to violate § 524(e) and § 1129(a)(1). *In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610, 615-17 (B.A.P. 9th Cir. 1990); *In re Linda Vista Cinemas, LLC,* 442 B.R. 724, 740-746 (Bankr. D. Ariz. 2010).

Debtor argues that these provisions do not release ECT's guaranty liability and that the provisions were accepted by the consenting class members. U.S. Bank argues that the

MEMORANDUM ON CONFIRMATION - 11

provisions regarding ECT do not stay Citizens from prosecuting any claims it may possess against ECT or any other non-debtor party.

The Court disagrees that the consent of a class can override the objection of another claim holder in that class to a plan provision which violates the Code. Even if a plan has the consent of all classes under §1129(a)(8), the plan must still meet all the other requirements of § 1129(a). However, the Court does agree that the covenant by the Agent to dismiss the pending litigation against the Guarantor and not to pursue the Guarantor *et al.* as long as the Debtor is not in default under the Plan as to Class 2, is not the equivalent of a temporary injunction. No bar exists to a creditor agreeing to limitations on its ability to pursue third parties on its claim as part of a bargain made in connection with a Chapter 11 Plan. Whether and to what extent U.S. Bank's agreement binds the Lenders under the syndicate Loan Agreement is a matter for resolution between those parties, beyond the ambit of plan confirmation in this case. But Citizens certainly retains whatever rights it may have under said agreement with respect to the Guaranty.

**3.** *Whether the Proposed Language re Eligible Assignees in the Amended and Restated Loan Agreement is Improper?*

The Funds argue that the provision in the Amended and Restated Loan Agreement (Dkt. 180, Exhibit A) regarding "Eligible Assignees" is an improper provision. It states that the Funds will not be Eligible Assignees until either they dismiss all their appeals of the Court's ruling that they do not constitute Eligible Assignees and consent to the Second Amended Plan, or are determined by the Bankruptcy Court or other court of competent jurisdiction to be Eligible Assignees by "final order with respect to which no appeal is pending, following the expiration of any applicable appeal period."

MEMORANDUM ON CONFIRMATION - 12

The Funds argue that this would prevent them from exercising rights as Eligible Assignees, even if they prevail in overturning this Court's preliminary injunction, as long as the Debtor appealed such a ruling, regardless whether the Debtor sought or obtained a stay of said ruling. The Funds' argument is well-taken, although it remains to be seen if overturning the Court's ruling that the Funds are not Eligible Assignees will have any practical significance as it will require that if a plan is confirmed, that an appeal be taken from the order confirming the plan, that a Court then stay the confirmation order pending appeal, and that the Funds then ultimately prevail on their appeal of the preliminary injunction.

### *4. Whether the Plan is Feasible under § 1129(a)(11)?*

Citizens argued in its Supplemental Objection that the Second Amended Plan is not feasible and that it is not fair and equitable. The latter argument is mooted by the Court's decision that the Second Amended Plan has been accepted by Class 2 and therefore there are no dissenting classes. While the feasibility argument is raised in cursory fashion, because it is a requirement of § 1129(a)(11) and Citizens is a holder of a claim entitled to vote, Citizens is within its rights to raise the issue. Neither side addressed this argument in Court at the July 24th hearing, as Citizens only raised it in the Supplemental Objection filed July 31, 2013. And even in that pleading, Citizens did not fully brief the issue, nor has Debtor fully responded to it stating only that Citizens cannot rely upon objections U.S. Bank has now withdrawn. The Court notes that Citizens was entitled to be involved in the hearing on confirmation as to Debtor's First Amended Plan, and chose to rely on U.S. Bank's representation of the Lender Group at those hearings. The evidence on feasibility presented by Debtor during the two days of testimony in June 2013 is admissible as against Citizens' feasibility objection. However, the objecting parties had not had the opportunity to present their case (lay and expert

witnesses) in opposition to the feasibility question. For these reasons, the Court finds that Citizens's feasibility objection requires further hearing. The parties are directed to contact the Court's chambers for a conference call to set a hearing, and timing for submission of witnesses, exhibits and briefs. The Court anticipates setting the hearing as soon as practicable.

## CONCLUSION

Based upon the pleadings filed by the parties in connection with this Second Amended Plan and the argument of counsel, the Disclosure Statement, the testimony and evidence previously taken in the confirmation hearing with respect to the First Amended Plan of Reorganization, and the Declaration from Mr. Waiss in support of Confirmation of the Debtor's Second Amended Plan of Reorganization, the Court concludes that all creditors on the mailing matrix were served with the motion to confirm the Second Amended Plan and notice was proper; that all of the voting classes voted in favor of the Second Amended Plan (dkt. # 175); and that, but for the definition of "Eligible Assignee" in the proposed Amended Loan Documents and the feasibility question under § 1129(a)(11), the Second Amended Plan complies with all other requirements of 11 U.S.C. § 1129(a). The parties are directed to contact the Court to address scheduling of a subsequent confirmation hearing to address Citizens's § 1129(a)(11) argument.

/// End of Order ///

MEMORANDUM ON CONFIRMATION - 14